## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

WAKE ENERGY, LLC, and WAKE )
OPERATING, LLC, )
     )
          Plaintiffs, )
     )
v. )     Case No. CIV-21-00352-PRW
     )
DEVON ENERGY PRODUCTION )
COMPANY L.P., )
     )
          Defendant. )

## <u>ORDER</u>

Before the Court are Defendant Devon Energy Production Company, L.P.'s Motion to Permanently Seal Subpoenas (Dkt. 37) and Motion for Protective Order to Quash Subpoena (Dkt. 47). Both matters are fully briefed. For the following reasons, the Motions (Dkts. 37 & 47) are **GRANTED**.

### *Background*

Devon owns and operates oil and natural-gas wells throughout Oklahoma, most of which are operated under leasing agreements requiring Devon to pay royalties to the owners of the oil and natural-gas rights. A severe winter storm struck Oklahoma in February 2021. In the aftermath of this storm, natural gas prices soared. Wake Energy, LLC, and Wake Operating, LLC (collectively, "Wake")—which own oil and natural-gas interests in some of the wells produced by Devon—filed suit, alleging that Devon failed to pay the proportionate share of these increased prices in the royalties Devon owed to the oil- and natural-gas-interest owners. Wake further alleges that Devon entered into various

1

contractual arrangements in order to actively conceal the actual price and profits Devon was receiving from its natural gas sales after the winter storm. Wake set forth three claims: (1) breach of contract, combined with violation of the Oklahoma Production Revenue Standards Act; (2) fraud, both actual and constructive; and (3) unjust enrichment. Wake also sought to certify a class of other oil- and-natural-gas-interest owners that Devon may have underpaid or defrauded. On August 25, 2021, the Court placed the parties on a scheduling order for class-certification discovery and subsequent class-certification briefings. After a couple deadline extensions, the parties filed a joint motion to stay the case pending private mediation, and the case was stayed on July 19, 2022. But those mediation efforts ultimately failed, and the stay was lifted on May 19, 2023.

Before the initial stay, Devon moved to permanently seal three subpoenas issued to three of Devon's customers, as well as to quash a subpoena issued to KPMG LLP. Now that the stay is lifted, the motions are ready for decision.

## *Discussion*

I.   *Motion to Permanently Seal Subpoenas.*

At the beginning of this litigation, the parties jointly proposed—and the Court entered—a Protective Order to facilitate the exchange of confidential information in discovery. As discovery proceeded, Devon produced two spreadsheets disclosing gas-sales transactions and data on quantities, pricing, pipeline systems, and purchasing counterparties (the "Sales Data"). Devon marked both spreadsheets as confidential under the Protective Order. Wake did not challenge that designation. Sometime later, Wake subpoenaed three of Devon's customers. These subpoenas recite the substance of some of

the confidential Sales Data. Wake filed a Notice of Filing with the Court and attached the subpoenas as exhibits, placing the confidential information in the public record.[1] After Wake refused Devon's request to redact the confidential information or file the subpoenas under seal, Devon moved to seal the subpoenas on an emergency basis pending full briefing on permanent seal—the question currently before the Court.

Rule 26 of the Federal Rules of Civil Procedure authorizes the Court to enter protective orders restricting the disclosure of sensitive discovery, including confidential commercial information.[2] As the Supreme Court observed in *Seattle Times Co. v. Rhinehart*,[3] litigants do not have "an unrestrained right to disseminate information that has been obtained through pretrial discovery."[4] Protective orders are designed to provide producing parties with guarantees of privacy so that parties may liberally produce and share discovery without fear of surrendering proprietary secrets.[5] This bargain is struck to encourage the free flow of information during discovery.

Here, the parties jointly stipulated to a protective order guaranteeing that discovery produced for the pending class-certification question would be protected from public disclosure.[6] The Protective Order clearly states that discovery marked as confidential may

---

[1] *See* Am. Not. of Filing Subpoena (Dkt. 32).

[2] Fed. R. Civ. P. 26(c)(1)(G).

[3] 467 U.S. 20 (1984).

[4] *Id.* at 31.

[5] *See id.* at 35 n.1.

[6] *See* Protective Order (Dkt. 26).

not be disclosed to any third parties and may not be placed in the public record unless redacted or under seal.[7] Devon marked its Sales Data as confidential, according to the process outlined in the Protective Order, and Wake did not challenge that classification upon receipt of the material. As such, the Sales Data is confidential and is protected by the Protective Order, and Wake violated the Protective Order by placing the unredacted, unsealed Sales Data in the public record. Since there is no public right of access to unfiled discovery materials,[8] and because the parties expressly agreed that such materials would only be placed in the public record if redacted or under seal, the Court finds that the subpoenas containing confidential information taken from the Sales Data should be permanently sealed for this stage of the proceeding.[9]

Wake advances several unpersuasive arguments in support of full disclosure of the confidential information. First, Wake argues that Devon has failed to carry its burden of proof and to demonstrate that the Sales Data is worthy of protection from disclosure. Though generally true that a party seeking to protect confidential information bears the burden of establishing good cause for restricted access—usually after a balancing inquiry

---

[7] *See id.* at 7–8.

[8] *See* 8A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2042 (3d ed. April 2023 update) (discussing *Seattle Times Co. v. Rhinehart*¸ 467 U.S. 20 (1984), and *Bond v. Utreras*, 585 F.3d 1061, 1074–75 (7th Cir. 2009)).

[9] Both parties addressed the subsequent question of whether, if this case reaches a merits stage, the Sales Data can be placed in the public record. The Court does not find it necessary to answer that question at this time. But even if the Court later concludes the Sales Data should be placed in the public record in some form for the merits determination, that conclusion will not change today's conclusion that these specific, individual subpoenas issued for the separate purpose of gathering information pertinent to class certification should be permanently sealed.

4

into what harm disclosure would cause weighed against the public's interests in disclosure[10]—that is not the case here. Wake cites to cases and legal standards that govern a court's inquiry when there is no preexisting protective order or when a party has filed a good-faith motion to disclose confidential information despite a protective order. Neither of those scenarios is implicated here—Wake and Devon agreed to the Protective Order that protects this information, and Wake then ignored the Protective Order and placed the confidential Sales Data in the public record. The Court's previous good-cause determination made when entering the Protective Order still stands, and Devon is not required to carry any other burdens before enforcing the terms of an agreement that Wake voluntarily entered into.[11]

Second, Wake claims that the Protective Order only protects the documents marked confidential but not the contents or substantive information contained within.[12] Following this argument, no information could ever be truly protected from public disclosure—one could simply retype the documents' contents and then publish it to the world, entirely

---

[10] *See* 8A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2042 (3d ed. April 2023 update).

[11] Additionally, the Court would find that there is good cause to keep the Sales Data sealed had the question been raised properly. In its Motion, Devon laid out the value of keeping the Sales Data confidential for preserving Devon's competitive advantage and the various steps it has taken in the past to keep the Sales Data confidential. *See* Mot. (Dkt. 37), at 6–7. And though the public generally has an interest in "access to the records that inform our decision-making process," at this non-merits stage, the Sales Data bears has no impact on the Court's decision-making. The balance would thus weigh against disclosure.

[12] *See* Resp. (Dkt. 39), at 7 ("[T]he Protective Order contemplates the protection of 'Documents and other information,' *not the contents thereof*."); *id.* at 9 ("[T]he information itself is not confidential nor subject to the terms of the Protective Order. To the contrary, the document itself is protected from being placed in the public record.").

circumventing the parties' agreement to protect proprietary information during discovery. This approach, if true, would make a mockery of the protective-order process and gut the entirety of Rule 26's privacy-interest protections.

Third, Wake contends that there is a broad public right of access to all judicial records and that Devon should not be allowed to force Wake to litigate "in the dark."[13] As mentioned above, though there is generally a right of public access to documents in the public record that are relied upon for substantive decisions, there is no public right of access to unfiled discovery. Materials produced in discovery "are not public components of a civil trial,"[14] since "[p]retrial discovery . . . 'w[as] not open to the public at common law,' and 'in general, [is] conducted in private as a matter of modern practice.'"[15] What's more, Wake isn't litigating in the dark—Devon provided large amounts of proprietary information so that Wake would be fully apprised of what strategies to pursue and what rights it may seek to enforce through the judicial process. Nothing in the record indicates that Wake is litigating without access to the facts, including Devon's relevant proprietary information. And one thing it may not do—by the terms of an agreement it voluntarily entered into—is disclose that proprietary information to the public for no apparent reason other than to harm Devon's proprietary interests.

In sum, Wake blatantly violated the agreed Protective Order by placing confidential information into the public record without redaction or seal. Devon is entitled to protection

---

[13] *Id.* at 12.

[14] *Rhinehart*, 467 U.S. at 33.

[15] *Utreras*, 585 F.3d at 1074–75 (quoting *Rhinehart*, 467 U.S. at 33).

of its proprietary information. For these reasons, the Court permanently seals the subpoenas. Pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedures,[16] the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[17] The Court thus **ORDERS** Wake to show cause in writing on or before June 30, 2023, why its conduct was "substantially justified" or why "other circumstances make an award of expenses unjust."[18]

## II.    *Motion for Protective Order to Quash Subpoena.*

Before the Court stayed the case, Wake subpoenaed KPMG LLP, the external auditor of Devon's indirect parent company, Devon Energy Corporation. The subpoena sought documents and communications in KPMG's possession regarding Devon's production and sale of natural gas from the Anadarko Basin. Devon moved to quash the subpoena based on the accountant-client privilege recognized under Oklahoma law[19] and because the subpoena was facially overbroad. Wake responds, however, that Devon lacks standing to challenge the third-party subpoena, and that even if it does have standing, the subpoena does not violate the accountant-client privilege.

---

[16] *See* Fed. R. Civ. Pro. 26(c)(3) ("Rule 37(a)(5) applies to the award of expenses.").

[17] Fed. R. Civ. P. 37(a)(5)(A).

[18] *See id.*

[19] *See* Okla. stat. tit. 12, § 2502.1.

The Federal Rules of Civil Procedure limit discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[20] Though the federal discovery rules do not define "privilege," a court "must apply the same rules of privilege to discovery as it applies at trial."[21] And the Federal Rules of Evidence provide that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."[22] Because Wake's claims arise from Oklahoma substantive law and this Court is sitting in diversity,[23] the Court applies Oklahoma's privilege law.[24]

A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."[25] Although a party generally

---

[20] Fed. R. Civ. P. 26(b)(1)

[21] *Biliske v. Am. Life Stock Ins. Co.*, 73 F.R.D. 124, 126 (W.D. Okla. 1977) (citations omitted). *See also Reeg v. Fetzer*, 78 F.R.D. 34, 36 (W.D. Okla. 1976) ("The privilege referred to in Rule 26(b) . . . means privilege as determined by the rules of evidence.") (citation omitted).

[22] Fed. R. Evid. 501. *See Frontier Refin., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998) (citing Rule 501 and applying Wyoming attorney-client-privilege law because "state law supplies the rule of decision on privilege in diversity cases").

[23] The Class Action Fairness Act, under which Wake has invoked the Court's jurisdiction, "loosened the requirements for diversity jurisdiction for two types of cases—'class actions' and 'mass actions.'" *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014).

[24] Wake cites no authority for its position that because Rule 501 predates the Class Action Fairness Act by thirty years, "the current version of Rule 501 does not address class actions and should not be applied to the case at hand." Pl.'s Resp. (Dkt. 48), at 5. The Court rejects this argument for its lack of support and because it would fabricate an exception to Rule 501 that contradicts its plain text.

[25] Fed. R. Civ. P. 45(d)(3)(A)(iii).

lacks standing to challenge a subpoena issued to a third party, a challenging party has standing when it "asserts a personal right or privilege with respect to the materials subpoenaed."[26] Devon asserts that the subpoena seeks information protected by Oklahoma's accountant-client privilege. An accounting client "has a privilege to refuse to disclose, and to prevent any other person or entity from disclosing, the contents of confidential communications with an accountant when the other person or entity learned of the communication because the communications were made in the rendition of accounting services to the client."[27] Accountant-client communications are "'confidential' if not intended to be disclosed to third persons" besides those "to whom disclosure is in furtherance of the rendition of accounting services to the client" and "those reasonably necessary for the transmission of the communication."[28] The privilege does not apply to communications alone; it also broadly extends to "other confidential *information* obtained by the accountant from the client for the purpose of rendering accounting advice."[29]

---

[26] *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No CIV-10-651-D, 2011 WL 691204, at *2 (W.D. Okla. Feb. 16, 2011) (citations omitted). *See also Francis v. APEX USA, Inc.*, No. CIV-18-583-SLP, 2020 WL 13094070, at *3 (W.D. Okla. May 11, 2020) (holding that a party "whose [privacy] right or privilege *is in jeopardy*" has standing to file a motion to quash) (citation omitted) (emphasis in original); *DeGrandis v. Children's Hosp. Boston*, No. 14-10416-FDS, 2016 WL 4491830, at *12 (D. Mass. Aug. 25, 2016) ("The personal right or privilege claimed need not be weighty: parties need only have 'some personal right or privilege in the information sought' to have standing to challenge a subpoenaed third party." (quoting *Patrick Collins, Inc. v. Does 1-38*, 941 F. Supp. 2d 153, 159 (D. Mass. 2013) (emphasis in original)).

[27] Okla. Stat. tit. 12, § 2502.1(B).

[28] *Id.* § 2502.1(A)(3).

[29] *Id.* § 2502.1(B) (emphasis added).

Because Devon "asserts . . . a privilege with respect to the materials subpoenaed,"[30] it has standing to challenge the subpoena on these grounds.

Wake directed the subpoena to KPMG, Devon Energy Corporation's external auditor. Devon argues that the subpoena seeks documents falling within Oklahoma's accountant-client privilege: communications and information related to KPMG's accounting services and advice to Devon Energy Corporation. The subpoena requests the following information from KPMG:

> **Request for Production No. 1**: Produce all documents evidencing, in any way, the Anadarko Basin Gas Production.[31]
>
> **Request for Production No. 2**: Produce all communications concerning, in any way, the Anadarko Basin Gas Production.
>
> **Request for Production No. 3**: Produce all documents evidencing, in any way, DEPCO's proceeds from gas sales for the Anadarko Basin Gas Production.
>
> **Request for Production No. 4**: Produce all communications concerning, in any way, DEPCO's proceeds from the gas sales for the Anadarko Basin Gas Production.
>
> **Request for Production No. 5**: Produce all documents and communications upon which KPMG relied for its audit of the 2021 Anadarko Basin production gas volumes found on the DEPCO Securities and Exchange Commission Form 10-K filing for the fiscal year ending December 31, 2021 table at Page 10.

---

[30] *See Pub. Serv. Co. of Okla.*, 2011 WL 691204, at *2.

[31] "Anadarko Basin Gas Production" is defined as "[Devon Energy Production Company's] gas production from the Anadarko Basin for the months of January, February, and March of 2021." *See* Subpoena (Dkt. 46-1), at 6.

Devon asserts that each Request for Production targets data provided to KPMG pursuant to Devon Energy Corporation's engagement of KPMG for accounting services and advice; namely, an audit of its financial statements. According to Devon, because the communications and information were not intended to be disclosed to third parties,[32] the accountant-client privilege protects the data from Wake's subpoena. The Court agrees with Devon that the targeted data falls squarely within Oklahoma's accountant-client privilege; the subpoena seeks communications and information provided to KPMG for the purpose of auditing its client. The Court must therefore "quash or modify the subpoena."[33]

Wake argues, however, that "[t]his audit involved the evaluation of Devon's own documents and did not necessarily involve communications or the giving of 'accounting advice,' which would be required to invoke the accountant-client privilege under Oklahoma law (if it applied)."[34] Rather, "KPMG simply verified the underlying information contained in Devon's public 10-K filing."[35] Wake further contends that the *underlying* factual information and documents are not privileged, so the Court should not quash the subpoena issued to KPMG.

These arguments are unpersuasive. First, Wake fails to explain how KPMG's audit of Devon Energy Corporation's financial statements would not involve communications or the rendering of accounting advice. Second, even if KPMG "simply verified the underlying

---

[32] Def.'s Reply (Dkt. 49), at 5.

[33] *See* Fed. R. Civ. P. 45(d)(3)(A).

[34] Pl.'s Resp. (Dkt. 48), at 5.

[35] *Id.*

11

information contained in Devon's public 10-K filing," that information was still "obtained by the accountant from the client"[36] in the context of an audit. Wake is clearly not subpoenaing KPMG for information that it could simply access from Devon's public 10-K filing; it wants to compare the public 10-K filing (and the documents Devon has already produced during discovery) with the information Devon Energy Corporation provided to its accountant. And though Wake is correct that the accountant-client privilege does not protect the underlying facts,[37] Oklahoma's accountant-client-privilege statute prevents Wake from subpoenaing the accountant for information obtained from its client.[38] To the extent the underlying data is relevant and proportional to the needs of the case, Wake can request that data from Devon directly without inserting itself into the accountant-client relationship.

Finally, Wake argues that even if the subpoena seeks privileged communications and information, the Court should modify the subpoena rather than quash it. But Wake proposes no modified language that would avoid disclosure of privileged communications

---

[36] Okla. Stat. tit. 12, § 2502.1(B).

[37] *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

[38] Contrary to Wake's assertion, this interpretation of § 2502.1 does not result in an absurdity. As Devon notes, the statute encourages not only frank communications between accountant and client but also full disclosure of information necessary for providing accurate and thorough accounting services. Wake's interpretation ignores the statute's basic mechanics and would render the privilege meaningless.

and information, and the Court concludes that modification is not warranted under the circumstances.[39]

### Conclusion

For the reasons given above, Devon's Motion to Permanently Seal Subpoenas (Dkt. 37) is **GRANTED**. Accordingly, the subpoenas are permanently sealed, and the Court **ORDERS** Wake to show cause in writing on or before June 30, 2023, why its conduct related to the subpoenas was "substantially justified" or why "other circumstances make an award of expenses unjust."[40] Devon's Motion for Protective Order to Quash Subpoena (Dkt. 47) is also **GRANTED**, and the subpoena issued to KPMG is **QUASHED** in its entirety.

**IT IS SO ORDERED** this 23rd day of June 2023.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[39] *See* 9A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2463.1 (3d ed. Apr. 2023 update) ("The decision whether to quash, modify, or condition a subpoena is within the district court's discretion.").

[40] *See* Fed. R. Civ. P. 37(a)(5)(A).